UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES                                    CRIMINAL ACTION


VERSUS                                           NO: 13-66


WALTER PORTER                                    SECTION: R


## ORDER AND REASONS

Defendant Walter Porter moves the Court to suppress out-of-court and in-court identifications by Bobby Basquine.[1]  Porter also requests oral argument and an evidentiary hearing.[2] Because Porter has failed to allege facts indicating that impermissibly suggestive procedures were used to obtain Basquine's identification, no hearing is necessary and his motion is denied.


## I.    BACKGROUND

Porter is charged with murdering Christopher Smith on November 21, 2010.  Specifically, a second superseding indictment charges Porter with

---

[1] R. Doc. 312-1.

[2] R. Doc. 314.

committing murder-for-hire (Count 2) and causing death through a firearm (Count 3), as well as conspiracy to possess firearms (Count 4).[3]

On July 16, 2011, police arrested an individual named Basquine, who had in his possession a 9mm handgun that was ballistically linked to the November 20, 2010 shooting death of Smith. Basquine later stated that he had purchased the handgun one to two months before his arrest from a man in a Ford Taurus.[4] Basquine described the seller as a tall, slim African-American man, who had medium-to-light brown skin, a bald fade haircut, and a goatee.[5] On October 21, 2011,[6] FBI agents showed Basquine a six-person photo array that included Porter's image.[7] Basquine did not identify any of the images as the person who sold him the handgun.[8] The Government has neither located the October 2011 photo array nor produced it to the defense.[9]

---

[3] R. Doc. 99.

[4] R. Doc. 3112-5 at 6 ("Basquine Grand Jury Testimony").

[5] *Id.* at 15-16.

[6] R. Doc. 312-4 at 5, n.1 (indicating that the six-person photograph array was administered on October 21, 2011).

[7] Basquine Grand Jury Testimony at 16-17.

[8] *Id.* at 17.

[9] R. Doc. 312-4 at 5.

Nearly one year later, on September 13, 2012, Basquine testified about the handgun purchase before a grand jury.  Basquine acknowledged that he had not identified anyone in the October 2011 photo array but indicated that he would "probably" recognize the seller if he could "see some pictures."[10] According to the grand jury transcript, Basquine was then excused from the grand jury room for a period of four minutes.[11]  During that time, he met with two FBI agents and an Assistant United States Attorney, who asked him to look through a binder containing 60 photographs and to identify "anyone who looks familiar."[12]  According to Basquine's grand jury testimony, he "went through all of the pictures, just from all the way through."[13]  Basquine did not stop until he reached Porter's image, number 33 in the set.[14]

Basquine then returned to the grand jury room, where he testified about the identification he had just made.  When asked what he had said to the FBI agents upon seeing Porter's photograph, Basquine responded: "I asked them was he tall. . . . And I said that that was the one.  If he's tall, that's the right one

---

[10] Basquine Grand Jury Testimony at 17.

[11] *Id.* at 19.

[12] *Id.*

[13] *Id.* at 20.

[14] *Id.* at 21.

there.  That's the one sold me the gun because that looks just like him."[15]
Later, Basquine was asked: "Otherwise, not knowing this person's height, does
that look like the guy that you just described earlier to this grand jury that
stepped out of that Taurus and sold you the gun."[16] Basquine responded: "Yes,
sir."[17]  When asked whether the FBI agents had drawn attention to Porter's
photograph or "forced" him to select that image from the binder of
photographs, Basquine testified that they had not.[18] And when asked whether
he had been pressured, threatened, or promised anything at all in exchange for
a positive identification, Basquine responded: "No."[19]

Porter moves the Court to suppress all out-of-court and in-court
identifications by Basquine.  He argues that the law enforcement used
impermissibly suggestive procedures to obtain Basquine's identification of
Porter as the 9mm handgun's seller and that any identification testimony by
Basquine should be excluded as unreliable.

---

[15] *Id.* at 20.

[16] *Id.* at 22.

[17] *Id.*

[18] *Id.*

[19] *Id.* at 22-23.

4

## II.   DISCUSSION

The Supreme Court has held that the Due Process Clause of the Fifth Amendment guarantees criminal defendants the right to exclude identification testimony that results from unnecessarily suggestive procedures that are conducive to mistaken identification. *See Perry v. New Hampshire*, 132 S. Ct. 716, 724-25 (2012); *Stovall v. Denno*, 388 U.S. 293, 302 (1967). The test for determining the admissibility of an in-court identification is two-pronged. First, a court must determine whether the pretrial identification procedure was impermissibly suggestive. *Neil v. Biggers*, 409 U.S. 188, 198-99 (1972); *Livingston v. Johnson*, 107 F.3d 297, 309 (5th Cir. 1997). If the identification procedure was not impermissibly suggestive, the inquiry ends. *See United States v. Honer*, 225 F.3d 549, 553 (5th Cir. 2000); *Livingston*, 107 F.3d at 309. If the procedure was impermissibly suggestive, the Court must determine "whether based on the totality of the circumstances, the [procedure] posed a very substantial likelihood of irreparable misidentification." *Honer*, 225 F.3d at 553. The Supreme Court has set forth five factors that bear on the likelihood of irreparable misidentification: (1) the witness's opportunity to view the perpetrator at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description; (4) the level of certainty demonstrated when making the identification; and (5) the time

5

between the crime and the identification. *Biggers*, 409 U.S. at 199-200; *see also United States v. Burbridge*, 252 F.3d 775, 780 (5th Cir.2001).

Porter gives three arguments for why the procedure used to obtain Basquine's identification was impermissibly suggestive, none of which has merit. First, Porter takes issue with the binder of photographs that FBI agents showed Basquine on September 13, 2012.[20] Porter notes that Basquine initially described the person who sold him the 9mm handgun as a tall, slim African-American man who had medium-to-light brown skin, a bald fade haircut, and a goatee. He argues that the binder is impermissibly suggestive because it contains photographs of individuals who "differ wildly" in appearance from that description, including a number of women.[21] The binder that was presented to Basquine contains a total of 60 photographs.[22] The large number of photographs weighs against a finding of suggestiveness. As the number of images grows, minor differences between the images become diluted and less obvious, which reduces the likelihood that differences will have a prejudicial effect on selection. *United States v. Sanchez*, 24 F.3d 1259, 1262-63 (10th Cir. 1994) (concluding that "[t]he lower the number of

---

[20] R. Doc. 312-1 at 3.

[21] *Id.* at 2.

[22] R. Doc. 312-6.

6

photographs used by officers in a photo array, the closer the array must be scrutinized for suggestive irregularities");  *cf. United States v. Sanchez*, 988 F.2d 1384, 1389 (5th Cir. 1993) (noting that "exhibiting a single photograph for identification purposes is impermissibly suggestive").  Moreover, although the binder features some women, it contains over 40 photographs of African American men, many of whom have medium-to-light skin tones, short hair, and a goatee, just as Basquine initially described.  Thus, even without those photographs that are true outliers, the binder contains more than enough plausible matches to Basquine's description that it is not impermissibly suggestive.  *See United States v. Merkt*, 794 F.2d 950, 958 (5th Cir. 1986) (holding that an array that contained seven newspaper photographs and four dissimilar "hard photographs" was not impermissibly suggestive because "excluding the four hard photographs," the remaining images matched the suspect's "general age and description").

Second, Porter argues that the Court should apply a presumption of suggestiveness because the Government has not produced the six-person photo array that FBI agents presented to Basquine on October 21, 2011.[23]  In support of this argument, Porter cites *United States v. Honer*, 225 F.3d 549

---

[23] R. Doc. 312-1 at 4.

(5th Cir. 2000).   There, two eyewitnesses to a drug sale identified the defendant from an array of several photographs, but the Government was unable to produce the images that had been used during discovery or at trial.

*Id.* at 552.   Reasoning that "when the government fails to preserve the photographic array used in a pretrial line-up there shall exist a presumption that the array is impermissibly suggestive," the court presumed the array to have been invalid, even though there was no evidence that the Government acted in bad faith.   *Id.* at 553.   Here, by contrast, the Government has preserved and produced the 60-photograph binder from which Basquine identified Porter.   So the presumption of impermissible suggestiveness does not apply.   While it is true that the Government has not located the array that Basquine viewed nearly one year earlier, on October 21, 2011, Basquine did not identify Porter (or anyone else) from that array.   Thus, regardless of whether the missing array was *conducive* to misidentifications, it did not actually *produce* an identification that would warrant suppression.

Third, Porter argues that the use of Porter's photograph in two separate photo arrays was impermissibly suggestive, particularly in light of the "equivocal" nature of Basquine's identification and the "pressure" inherent in

8

the circumstances under which the identification was made.[24]  As an initial matter, Porter's characterization of Basquine's identification as "equivocal" is misleading.  After identifying Porter in the 60-photograph binder, Basquine testified about the identification process.  When asked what he had told law enforcement about the Porter's photograph, Basquine responded: "I said that that was the one.  If he's tall, that's the one right there.  That's the one sold me the gun because that looks just like him."[25]  Later, Basquine was asked of Porter's photograph: "Otherwise, not knowing this person's height, does that look like the guy that you just described earlier to this grand jury that . . . sold you the gun?"[26]  Basquine responded: "Yes, sir."[27]  Contrary to Porter's contention, this testimony suggests directness and certainty, not equivocation.

Porter's emphasis on the use of his photograph in two separate photo arrays is also unavailing.  In *Nettles v. Wainwright*, the Fifth Circuit held that a lineup was not impermissibly suggestive, even though the witness viewed a photo array shortly before the lineup and the defendant was the only person who appeared in both the photographs and the lineup.  677 F.2d 410, 414 (5th

---

[24] *Id.* at 3.

[25] Basquine Grand Jury Testimony at 20.

[26] *Id.* at 22.

[27] *Id.*

9

Cir. 1982).  Other circuits have reached the same conclusion, reasoning that while the successive use of the defendant's image is a factor to be considered, it alone is not dispositive.  *United States v. Taylor*, 825 F.2d 408, 1987 WL 38254, *2 (4th Cir. 1987) ("While this is, of course, one factor to consider, we decline to hold that this factor alone makes the line-up suggestive."); *United States v. Davenport*, 753 F.2d 1460, 1463 (9th Cir. 1985) ("The fact that [defendant] was the only individual common to the photo spread and the lineup cannot, without further indicia of suggestiveness, render the lineup conducive to irreparable misidentification."); *United States v. Briley*, 726 F.2d 1301, 1306-07 (8th Cir. 1984) (holding that the fact that defendant was the only person displayed in both a photospread and a lineup did not make identification procedures *per se* suggestive).  Here, although Basquine was shown two photo arrays containing Porter's image, nearly one year passed between the first showing in October 2011 and the second showing in September 2012.  Both the substantial passage of time and the large number of images involved in the second showing negate the possibility that Porter's presence in both arrays adversely affected the identification process.  *See Taylor*, 1987 WL 38254 at *2 (concluding that the passage of ten days between the photospread containing defendant's image and the lineup at which defendant was identified "mitigates against a finding of suggestiveness").

10

Finally, although Porter argues that Basquine was "pressure[d]," Basquine's contemporaneous grand jury testimony suggests that he felt no pressure whatsoever to identify anyone from the 60-photograph binder. Minutes after selecting Porter's photograph, Basquine testified that he had reviewed the photo binder carefully and methodically, beginning with the first photograph and proceeding in order until hear reached Porter's image, number 33 in the set. In describing his process, he stated: "I just went through the pictures looking at the people. . . . I went from one all the way to 33."[28] When asked whether the FBI agents who gave him the binder had drawn attention to Porter's photograph or "forced" him to select that image, Basquine testified that they had not.[29] And when asked whether he had been pressured, threatened, or promised anything in exchange for a positive identification, Basquine responded: "No."[30] Porter does not challenge Basquine's description of his identification process; nor does he allege that Basquine lied to the grand jury about the procedures involved. Thus, Porter has failed to allege facts that, if proved, would warrant a finding that Basquine identified Porter under impermissibly suggestive circumstances.

---

[28] *Id.* at 21.

[29] *Id.* at 22.

[30] *Id.* at 23.

Because Porter has failed to carry his burden of establishing an impermissibly suggestive procedure, the Court need not consider the second prong of the test--whether Basquine's identification was nevertheless reliable. *Livingston*, 107 F.3d at 309 ("If the identification procedure is not impermissibly suggestive, the inquiry ends."); *see also Sanchez*, 24 F.3d at 1262 ("These two prongs must be analyzed separately, and it is only necessary to reach the second prong if the court first determines that the array was impermissibly suggestive.").  The Court denies Porter's motion to suppress evidence without an evidentiary hearing.  *See United States v. Harrelson*, 705 F.2d 733, 737 (5th Cir. 1983) (concluding that "evidentiary hearings [on motions to suppress evidence] are not granted as a matter of course, but are held only when defendant alleges sufficient facts which, if proven, would justify relief").

## III.  CONCLUSION

For the foregoing reasons, defendant's motion to suppress the out-of-court and in-court identifications of Bobby Basquine is DENIED.

New Orleans, Louisiana, this <u>12th</u>  day of February, 2016.

_____

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE